**Appeal of ROBERT P. HYAMS COAL CO.    Docket No. 219. (LTD.) ET AL.[1]**

1. Depreciation for 1918 and 1919 computed upon the average balance of depreciable property during each year rather than upon the balance at the close of each year was correctly so computed.

2. Charges for towing from March 6, 1918, to May 6, 1918, billed to the taxpayer prior to July 31, 1918, but charged as an expense upon its books of account for the fiscal year ended July 31, 1919, was a deductible item from the gross income of the taxpayer for the fiscal year ended July 31, 1918, since its return was made on an accrual basis.

3. The evidence presented does not warrant the transference of certain amounts shown as income in the taxpayer's income tax returns for the fiscal years ended July 31, 1918, and July 31, 1919, to the returns for the fiscal years ended July 31, 1919, and July 31, 1920, respectively.

4. The evidence presented does not warrant the allowance of a deduction from the taxpayer's gross income for the fiscal year ended July 31, 1919, of a greater amount for depreciation upon automobile trucks purchased during the fiscal year than was allowed by the Commissioner.

Submitted November 10, 1924; decided December 18, 1924.

*H. A. Mihills, C. P. A.*, for the taxpayer.

*A. Calder Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

---

[1] The following affiliated corporations are parties to this appeal: The Gulf Barge and Towing Co., the South Brilliant Coal Co.

Before GRAUPNER, LITTLETON, and SMITH.

This appeal involves income and profits taxes of the Robert P. Hyams Coal Co. (Ltd.), and affiliated corporations with principal office at New Orleans, La., for the fiscal years ended July 31, 1918, and July 31, 1919. From oral testimony given before it the Board makes the following

FINDINGS OF FACT.

(1) The Robert P. Hyams Coal Co. (Ltd.), the Gulf Barge and Towing Co., and the South Brilliant Coal Co., all Lousiana corporations with principal office at New Orleans, La., are affiliated corporations within the meaning of section 240(b) of the Revenue Act of 1918, and filed consolidated returns for the fiscal years ended July 31, 1918, and July 31, 1919. The accounts of each corporation were kept upon a fiscal year basis ended July 31.

(2) A deficiency letter was mailed to the taxpayers on July 22, 1924, proposing the assessment of additional taxes for the two taxable years as follows:

Fiscal year ended July 31, 1918_____ $5, 705. 46
Fiscal year ended July 31, 1919_____  1, 402. 35

(3) The amount of depreciation allowed by the Commissioner as a deduction from the gross income of the South Brilliant Coal Co. for the fiscal years under review was computed at a given rate per ton multiplied by the number of tons of coal mined during each fiscal year. The rate was determined for each year by adding to the book cost of the plant assets at the beginning of the year one-half of the cost of the additions to plant account during the year from which total was deducted the estimated salvage value; the remainder was then divided by the estimated number of tons of coal in the mine at the beginning of the year.

(4) After the tax returns of the taxpayers for the years ended July 31, 1918, and July 31, 1919, had been filed and after the Commissioner had verified the returns from an examination of the taxpayers' books of account, the taxpayers had their accounts audited by a firm of certified public accountants, which audit disclosed the following:

(a) That there was charged on the books of account of the Gulf Barge & Towing Co., as an expense of the fiscal year ended July 31, 1919, $3,500 covering towing charges made by the Alabama Coal & Transportation Co. for the period March 6, 1918, to May 6, 1918. The bill for this account was dated May 31, 1918, and was received by the taxpayer prior to the close of its fiscal year ended July 31, 1918.

(b) That there had been credited to the income account on the books of the Gulf Barge & Towing Co. of the fiscal year ended July 31, 1918, $20,067.13 representing freights earned or to be earned by barges operated by the taxpayer. The dates when the freights were entered upon the books of account and other data in connection with the services performed are shown by the following table:

| No. | Date entered. | Date sailed. | Cargo. | Barge. | Amount of freight, |
|---|---|---|---|---|---|
| 1 | 7-29-18 | 7-31-18 | Coal | San Antonio | $5,617.77 |
| 2 | 7- 9-18 | 7-15-18 | Lumber | Holliswood | 10,784.58 |
| 3 | 7-23-18 | 8-18-18 | ___do | Madison | 3,664.78 |
| Total | | | | | 20,067.13 |

Number 1 sailed from New Orleans for Havana, Cuba, finished discharging the cargo on August 7, 1918, and returned to Mobile, Ala., on August 15, 1918.

Number 2 sailed from Pensacola, Fla., for Havana, Cuba, finished discharging the cargo on August 27, 1918, and returned to Pensacola, Fla., on August 31, 1918.

Number 3 sailed from Pensacola, Fla., for Havana, Cuba, finished discharging the cargo on September 11, 1918, and returned to Pensacola on September 15, 1918.

(c) That there had been credited to the income account of the Gulf Barge & Towing Co. for its fiscal year ended July 31, 1919, $18,151.59, representing freights earned or to be earned by barges operated by the taxpayer. Information relative to the operation of these barges is shown by the following table:

| No. | Date entered. | Date sailed. | Cargo. | Barge | Amount of freight. |
|---|---|---|---|---|---|
| 1 | 7-21-19 | 7-22-19 | Coal | San Antonio | $9,590.85 |
| 2 | 7- 6-19 | 7- 6-19 | Lumber | Ethel Clarke | 5,151.25 |
| 3 | 7- 6-19 | 7- 6-19 | ___do | Madison | 3,409.49 |
| Total | | | | | 18,151.59 |

No. 1 sailed from Pensacola, Fla., for Havana, Cuba, finished discharging her cargo on August 2, 1919, and returned to Pensacola on August 7, 1919.

No. 2 sailed from St. Andrews, Fla., for Cardenas, Cuba, discharged her cargo at Cardenas, and returned to St. Andrews August 24, 1919.

No. 3 sailed from St. Andrews, Fla., for Caibarien, Cuba, discharged her cargo, and returned to Mobile, Ala., on August 30, 1919.

(5) The freights referred to under paragraph (4) above represent transportation charges for the moving of coal and lumber. The charges were made against the Robert P. Hyams Coal Co. (Ltd.). The last-named company sold the coal and lumber in Cuba and paid the Gulf Barge & Towing Co. so much a ton for coal and so much a thousand for lumber for transporting the commodities to Cuba. The coal was consigned to the Cuban Coal Co. and the lumber to different receivers of lumber in Havana. When a vessel sailed the taxpayer charged up the freight that was due from that vessel as a charge against it. The president of the company testified:

We could not withhold that charge until the vessel got back. We could not very well run our books that way. * * * When we took out a bill of lading, what we call a bill of lading as a receipt for the cargo, from the master of the vessel, necessarily that was a basis for charging that much freight charges.

Freights on these cargoes were not earned until trips were completed. About 75 per cent of the expenses incident to the trips was paid during the fiscal years ended July 31, 1919, and July 31, 1920, respectively, and this proportion of the expenses was charged on

the taxpayer's books of account in the fiscal year following that in which the freights were credited. Wages of the crews were paid and charged to expense when trips were completed.

(6) Prior to August 31, 1919, the taxpayer acquired six automobile trucks for the delivery of coal, the total cost being $26,412.83. The Commissioner has allowed depreciation upon these trucks in the amount of $4,402.09, which is the amount of depreciation computed at the rate of 33⅓ per cent per annum for a six-month period.

### DECISION.

The deficiency in tax should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on seven days' notice.

### OPINION.

SMITH: In this case the Commissioner has found deficiencies in tax as per his letter of July 22, 1924. The deficiencies found resulted from changes made in the taxpayers' original income-tax returns, most of which changes have been acquiesced in by the taxpayers. The taxpayers contend, however, that certain errors were made in the original returns which should be corrected at this time and that the deficiency in tax should be computed after the correction of errors pointed out by them.

Inasmuch as the deficiencies in tax for each year are before the Board for its review, the Board takes jurisdiction of the case to consider all points raised for the purpose of reaching the correct amount of the deficiency in tax, if any, for each of the years under review.

1. The first point of complaint is that the Commissioner has not correctly computed depreciation upon the depreciable properties of the South Brilliant Coal Co. The depreciation has been computed at a rate based on the current exhaustion of mineral. The taxpayer does not object to this method of determination but claims that additions made to the plant account during the year should be depreciated as though they had been owned by the taxpayer from the beginning of the year. The Commissioner has based the depreciation upon the average amount of the plant account throughout the year rather than upon the amount of the plant account as it existed at the close of the year. The taxpayer contends that unless the depreciation is based upon the total amount of the plant account at the close of the year, it will not have received back in depreciation the full amount of the plant account by the time that the mine has become exhausted.

The substance of the taxpayer's contention appears to be that the taxpayer could not deduct as *depreciation* one-half of the cost of additions to plant account made during the last year of operation. Such an amount could, however, be deducted as a *loss*, if any loss was actually sustained upon such portion of the additions made. So far as the tax years under review are concerned the point is not well taken, for the taxpayer did not cease mining operations during those years, and the Board can see no justification for a contention that the cost of additions to plant and equipment made during the last

half of the year should be spread over units of coal mined during the first half of the year. The determination of the Commissioner upon this point is approved.

2. The books of account of the Robert P. Hyams Coal Co. (Ltd.) show as a payment of the fiscal year ended July 31, 1919, $3,500 representing towing expenses paid to the Alabama Coal & Transportation Co. The taxpayer attempted to keep its books of account upon an accrual basis. The taxpayer made its returns of income upon the basis of its books of account and the Commissioner has made no attempt to amend its income tax returns for the purpose of changing them to a cash basis. In view of this situation the Board is of the opinion that changes which may be necessary to place the returns upon a correct basis should be made.

The evidence with respect to the towing charges is to the effect that the services were performed during the fiscal year ended July 31, 1918; that the bill for those services was rendered during that fiscal year, and that the bill became due and payable in that fiscal year. The Board is of the opinion that the taxpayer's income tax returns for the fiscal years ended July 31, 1918 and 1919, should be amended by excluding this deduction from the return of 1919 and by allowing it as a deduction from the gross income of the fiscal year ended July 31, 1918.

3. The evidence with respect to the unearned freights is far from satisfactory. No copies of the agreements between the Robert P. Hyams Coal Co. (Ltd.) and the Gulf Barge & Towing Co. relative to the time when the freights became a liability of the Robert P. Hyams Coal Co. (Ltd.) have been submitted. So far as anything in the record appears, the Robert P. Hyams Coal Co. (Ltd.), may have accrued the charge owed by it to the Gulf Barge & Towing Co. in the same year in which the latter company charged the former company. If this is a fact, there appears to be no good reason why the Gulf Barge & Towing Co., an affiliated company, should not be required to account for the freights as of the years when charged upon its books of account. Furthermore, it does not appear whether the adjustments sought to be made in the income tax returns of the two years under review would present a correct picture of the income for those years. It must be assumed that the taxpayers kept their books of account upon some consistent basis and the evidence before the Board does not show that the changes asked for are all the changes which should be made if the basis of the accounting is to be modified. So far as the president of the Gulf Barge & Towing Co. was aware the books of account have never been changed to accord with the changes requested to be made at the present time. If such changes were made the taxpayer would have an increased net income for the fiscal year ended July 31, 1920, of $18,151.59, representing freights transferred from the preceding taxable year. So far as this Board is advised the Commissioner has not attempted to assert any additional tax liability for the last-named fiscal year, and that year is not before us. In view of the unsatisfactory record, therefore, the Board is of the opinion that the claim of the taxpayer upon this point should be denied.

4. Prior to August 31, 1919, the Robert P. Hyams Coal Co. (Ltd.), acquired six automobile trucks for the delivery of coal. A revenue agent in examining the taxpayer's books of account for the purpose

of verifying its tax return for the fiscal year ended July 31, 1920, allowed depreciation upon all additions to plant account as if those additions had been made at the middle of the fiscal year; or had been in use for an average of six months during the year. The taxpayer submits to the Board that the automobile trucks in question were purchased prior to the close of the first month of the fiscal year and for this reason claims that it should be entitled to a deduction of an amount representing 11 months' depreciation upon the automobile trucks for the fiscal year.

It is understood that the Commissioner has applied in this case the usual rule in the determination of the amount of depreciation to be allowed as a deduction from gross income upon additions to the plant account made during the taxable year. The taxpayer has now singled out six automobile trucks which were purchased early in the year and has claimed more than six months' depreciation upon them.

The Board is not satisfied that the rule which has been invoked by the Commissioner in the determination of the deductible depreciation is inapplicable here. The taxpayer has not shown to the Board the dates of acquisition of all additions to plant account during the year. So far as the Board is aware the purchase of the automobile trucks at the beginning of the year may be counterbalanced by the purchase of some depreciable asset at the very close of the year upon which the taxpayer has been allowed six months' depreciation. Upon the evidence which has been submitted this claim of the taxpayer must be denied.